*ROANE, Judge.
This is an action of debt, against the executors of Richard Elliott, on a joint bond entered into by the said Richard Elliott, with T. Butler and W. Walker, on the 17th of October, 1782. At the trial, the plaintiff having offered the bond in evidence to support his action, the defendant objected thereto, and applied to the Court to instruct the jury, “Whether the action against the defendant, as executor of Richard Elliott, is maintainable, or not?” But the Court being of opinion, that, as the obligor Richard Elliott died since the commencement of the act concerning joint rights and obligations, his representatives are made chargeable by that act, upon the said obligation, in the same manner, as if it had been several as well as joint, refused to instruct the jury, to the effect desired by the defendant.
The rectitude of this opinion, is now to be considered:
The question here, is not, whether the Legislature have power to pass a retrospective law, if it thinks proper? But, whether the general words of the act in question, shall be construed to have a retrospective operation?
Nor is the question here, whether the Legislature has power to transfer to a Court of Common Law, cognizance of a claim, which would, evidently, be established in a Court of Equity? There is nothing in this record, as it now stands, which would justify a Court of Equity in decreeing the money against the representatives of Richard Elliott, on the ground of a moral obligation in him paramount to the bond ; there is nothing which evidently shews, that he was the real principal, or received the benefit for which the bond was given: Whatever our conjectures may be on this point, 'the record does not bear us out on this occasion: And it was well observed by Mr. Hay, on the former argument, that for any thing known to us, *it might have been a joint debt, due for a joint benefit, received by all the obligors. This idea is rather strengthened by the circumstance of the condition of the bond extending to all the obligors, and not to Richard Elliott singly, and is perfectly consistent with the payments made by the obligor Richard Elliott.
The true question, then, to be decided, is that which was decided by the District Court: This record does not authorise us to distinguish between the cause of the principal and surety: And no other decision ought now to be given, than would be proper, if the representatives of the other obligors, instead of Elliott, were now before the Court.
At the time of entering into the bond in question, a right existed in each obligor, that his estate should be exonerated from the payment of the debt b3> his death, living his co-obligors. Mr. Randolph’s argument, that this is not a right, but a moral wrong, depends upon the assumption, that Richard Elliott was the real debtor. It is an argument which could not be used, if the other obligors were before the Court, and his assumption were well founded. ' The force of the argument depends, therefore, upon the assumption of a fact, which is not supported by the record. And this right inseparable from the contract, by the laws then in force, still existed, unless the words of the act of 1786 shall affect prior, as well as subsequent contracts.
These words are, “the representatives of one jointly bound with another for the payment of a debt, and dying in the lifetime of the latter, may be charged, as if the obligors had been bound severally as well as jointly. ”
Under the critical and grammatical meaning of this word “bound” as is contended, we are called on to give a construction to the act, which is contrary *to the general nature, and operation of a statute: Which will subject contracts to be decided upon by different laws, from those *513 under which they were made; and which will produce a diversity of decision upon similar contracts, made at the same time, in consequence of the different periods at which the respective decisions may take place. When such consequences as these are to follow, I shall certainly disregard any construction founded merely upon the grammatical extent of the meaning of a word.
Every argument in favor of the lex loci, as was well argued by the appellant’s counsel, holds with equal strength in favor of the lex temporis: And I stand upon this broad principle, that men, in regulating their contracts, shall have the benefit of existing laws, and not have them overturned or a ffected by future laws,- which they certainly could not foresee, or provide against.
These ideas are not new ; they have had the sanction of solemn decisions, both in this country and in England.
In the case of Gilmore v. Shuter, T. Jones’s Rep. 108, [2 Show. 17,] there was a parol nromise in consideration of marriage, made prior to the statute 29 Car. 2, but to be performed after. That statute enacts, that from and after 24th June, 29 Car. 2, no action shall be brought, &c. without a note in writing. It was determined, notwithstanding these imperative words, that, after that day, an action would lie in the case in question: for that, a construction ought not to take effect destroying existing rights, prior to the passage of the law; and that the statute only extended to promises made after that day.
In the case of Couch, qui tam v. Jefferies, 4 Burr. 2460, which was an action by an informer for a penalty, and a verdict obtained by the plaintiff, a ^motion was made to stay the judgment, on the ground of a payment of the penalty having been made into the stamp office before the 1st September, 1760, under an act of Parliament which says, “that if the duties before neglected to be paid, shall be paid in, on or before 1st September, 1769, &c. the person who has incurred the penalty shall be discharged of, and from the said penalties.”
The question was, whether the act related to actions brought before the operation therof? It was decided, by the Court, that it did not; and it was said, by Lord Mansfield, “here is a right vested; and it is not to be imagined that the Legislature could, by general words, mean to take it away from the person in whom it was so legally vested. They certainly meant future actions. Otherwise, it would be to punish the innocent, instead of the guilty. It can never be the true construction of this act, to take away this vested right.”
The case of Martin v. Payne, in the Special Court of Appeals, June, 1793, was an appeal from a judgment of the District Court of Henrico, quashing an execution issued the 12th of January7, 1793, on a 12 months bond, dated in October, 1791 ; the Court reversed the judgment, being of opinion, that inasmuch as the remedy was provided by the act of 1787, although the said act might have expired, yet it was still in force, as to cases which accrued while it was unexpired, or unrepealed; and some of the Judges held, in their arguments, that the law was the same, as relative to bonds, the time of which had run out; thus, making no distinction between an imperfect, and a perfect right.
Fortified by such authorities, which entirely accord with my own sentiments, I have no hesitation to say, that the act of 1786, ought to be construed to extend only to future cases.
My opinion, in the present instance, being confined to the true question before us, nothing now *said can apply to a case, in which the Legislature has, in fact, passed a retrospective law; nor to a case in which they do ’> ot touch the right, but only alter the remedy; nor to a case, where a right is affected, but that right is a mere contingency, or possibility. Possibly, within these descriptions, or some of them, most of the cases put by Mr. Randolph from our Code of laws, may be found to fall. But, I do not deem it necessary to anticipate important and undecided questions ; whensoever they occur, they shall receive my best consideration. But, it is necessary to defend the decision of this Court in the case of Gaskins v. The Commonwealth. That decision neither affected the right, or the remedy; it only imposed a limitation of time, by construction of law, within which the remedy should be asserted. None of the fundamental principles in question were invaded by that decision.
For these reasons, I am of opinion, that the opinion of the District Court was erroneous ; that the judgment should be reversed; and a venire facias de novo awarded: and that an instruction should be given to the next jury, on the point submitted, corresponding with the ideas now expressed.
FLEMING, Judge.
The sole question is, whether the act shall have a retrospective operation? And I think it ought not: For, there is a difference between the expression with regard to joint-tenants, and that with regard to joint obligations. In the first, it is, in effect, that all joint-tenants, who now are, or hereafter shall be, entitled to any estate, may be compelled to make partition thereof; and, if partition be not made, the parts, of those who die first, shall not accrue to the survivors, but shall descend and be transmissible to their heirs and representatives; which comprehends, in terms, the joint-tenancies in being at the time of making the act, as well as those to be created afterwards. But, in the case of the joint obligations, the present *tense is entirely dropt; for there, the words are, that the representatives of one jointly bound with another, may be charged in the same manner as if the obligors had been bound severally, as well as jointly. Now, how are we to account for this difference in the language, except by a difference in the legislative will, with regard to the two cases? In one, the word now is anxiously inserted, because it was only forestalling the partition which the party might have made, and modifying the succession to the estate: In the other, it is omitted, because it would *514 ■create a new obligation altogether, and render the party liable further than he had engaged; which would be to alter men’s contracts long after they were entered into, and thereby abolish the best established principles of justice: A consequence, Which gives a very unfavorable complexion to the claims of the appellee. Statutes are prima facie prospective in their operation; and retrospective laws, being odious in their nature, it ought never to be presumed that the Legislature intended to pass them, where the words will admit of any other meaning. ’ Every construction, therefore, which goes to introduce a retro-active effect, and by altering the engagements of men, to defeat justice, is contrary to the general system of an enlightened jurisprudence. Consequently, if the words be even doubtful, such a construction ought to be made as is most consistent with reason, and the rights of the parties to be affected. But, this will not be attended to, according to the interpretation which is contended for by the appellee’s counsel; for, there being no express declaration that existing bonds shall be included, and the words used being not only susceptible of a future sense, but the whole context of the statute manifestly pointing at a prospective operation, any construction which will produce an ex post facto effect, would absolutely be to strain the words, in order to change the contract, and vary the rights of the parties. But, as I cannot subscribe to an exposition productive of such consequences, my opinion is, *that the judgment should be reversed, and a new trial awarded, with an instruction to the effect which has been proposed by the Judge, who preceded me.
LYONS, Judge.
I have always considered ex post facto laws as. unjust and improper; but, in 10 Co. 55, it is said that acts of Parliament may have retrospect, if so intended; and Lord Hardwicke, in Lee’s Cases, 7, lays it down that a Parliamentary construction of a former statute ought to be regarde4- However, as such laws are, necessarily, oppressive, Courts have never been fond of giving a retrospective effect to a statute, if the words would admit of a construction more consistent with reason ; for, in cases of that kind, the rule is to follow the meaning, and not the words; especially if these tend to alter the terms of existing contracts, or to take away the rights, or property, of the citizen. 12 Mod. 687; 10 Mod. 513; [Rex v. Croke,] Cowp. 29. Whenever, then, the words are doubtful, the course is to enquire for the intention ; and, if possible, to avoid a construction which would destroy the principles of natural justice, and overthrow rights already acquired. Hence, in the construction of the statute of frauds, actions previously accrued were held not to be barred. [Gilmore v. Shuter,] 1 Ventr. 230; 2 Mod. 310, S. C.: and that for registering contracts of South Sea stock was decided not to extend to prior contracts. [Wilkinson v. Meyer,] 2 Ld. Raym. 1350; [1 Stra. 585, S. C.] It was upon these grounds that I founded my 'opinion in Turner v. Turner’s ex’x; and not upon the assumption of a power to control the acts of the Legislature, and declare them void, because not approved of by me. To apply these principles to the case now before the Court: The question, here, depends upon the true construction of the act of 1786, concerning joint rights and obligations. Por the appellee, it was contended, that the word bound has a retrospective operation; because, being the perfect participle passive, it may comprehend time past as well as future. But, there is no necessity for imposing this twofold sense upon *the word, when it is plain that the meaning of the Legislature can be better attained without it. Why extend the act to past contracts, when confining it to those which should be after-wards entered into, will 'satisfy the words, and produce a construction more consistent with reason and the rights of the citizen? The object of the law was to correct a subsisting inconvenience, and not to create one, by subverting principles. But, how was this to be affected? Not by altering old contracts, surely, but by regulating new ones. Not by adding further obligations to anterior engagements, but by attaching new qualities to future ones. Finally, not, by giving present creditors a further security, but by investing future obligors with additional rights. All this was consistent with the true principles of Legislation, but the other would have been repugnant to them. Of course, if the text be doubtful, the fair inference is, that the Legislature, who, without express words, ought not to be presumed to have willed injustice, intended to provide for future contracts only: And, if so, the grammatical construction is not to be regarded; but, such an exposition is to be made, as will best comport with the views of the Legislature, and the rights of the parties. This will be completely attained, by leaving anterior bonds as they were, and by rendering the estate of the decedent liable upon those to be made in future. I am, therefore, of opinion, that the judgment is erroneous, and ought to be reversed.
PENDLETON, President.
The bond on which the present suit is brought, is dated October 7th, 1782, by which three persons are jointly bound in the penalty of 6001. with condition to be void on payment of 3001. by either, in December, 1783. In 1786, an act passed, “that the representatives of one jointly bound with another, for the payment of a debt, &c. and dying in the life-time of the latter, may be charged by virtue of such obligation, in the same manner as such representatives might *have been charged if the obligors had been bound severally, as well as jointly.’’ At the time of passing this act,' all the obligors were living; but. before any suit, Elliott, one of them, died; by which, as the law stood when the bond was entered into, he was discharged at law, and the remedy was against the surviving obligors; but, this suit is brought against his executors, upon a supposition that this act gives to prior joint bonds, then existing, the effect of such as were joint and several; which is the opinion of the District Court; and, whether it be so, or that the act is to operate only on bonds entered into subsequent to its commencement, is *515 the present question. It was well observed by Mr. Hay, that the Legislative provisions are to operate prosj)ectively; declaring what the law shall be, not what it is: And it must be acknowledged, that retrospective laws, usually termed ex post facto, that is, such as declare prior acts criminal, which were not so at the time they were done, or which either impair or give a new and important force to existing obligations or contracts, contrary to their situation at. the time they were entered into, are against the principles of natural justice. Citizens contract on a view of existing laws, without anticipating future regulations. The Federal Constitution has prohibited the State Legislatures from passing any such laws; and, although that is subsequent to the present act, I consider it as declaring a principle which always existed; a principle, adhered to by our Legislature in general, since, in all their repealing clauses, there is a saving of all rights vested under the former laws; but, more particularly in an act passed in January, 1788, which will be noticed hereafter.
The power of the Judiciary to declare a Legislative act void, as unconstitutional, has been lately *much agitated. On this occasion, we are not obliged to give an opinion on that general question, since, in my judgment, the Legislature did not intend that this clause, in the act of 1786, should operate upon prior joint bonds. The word bound may, in a grammatical sense, mean past bonds, or future, or comprehend both; and we are to enquire in which sense it was here used. The first evidence of intention, that it should operate futurely only, was properly drawn from the expression varying from that in the first clause respecting joint rights, speaking of joint-tenants who now are, or who hereafter shall be; and considering that, under former laws, a joint-tenant might at any time sever the jointure by his own act, the law seems only to have varied the remedy, and not to have affected the right. But, how did the law stand, respecting joint obligations, before this act? The death of one of the obligors wholly discharged him at law, and threw the obligation on the survivors. If the dying obli-gor was the principal, although discharged at law, his representatives were liable to the creditor in equity, because he was under a moral obligation to pay the money, independent of the bond; or, if his sureties paid the money, his executors are answerable to them, even at law, for their reimbursement. But, if the person first dying was a surety, his estate was totally discharged from the claim of the creditor, with whom he had equal equity: perhaps he might be liable to contribution at the suit of the other sureties in Chancery; but, on that, I give no opinion. On a joint and several bond, each, and their estates, were bound for the whole at law. Very properly, then, did they drop the expression, who now are bound, used in the former clause: And, when we are on construction what the Legislature meant by this general term bound, since giving it an operation on future bonds only, will give the word a meaning, shall we extend it to former bonds, and make them violate the great principles before stated? I think not. Arguments of public inconvenience have just weight in construction *of statutes ; and we were alarmed by the counsel, with a long list of our acts of Assembly, retrospective in their operation, which will be affected by the present decision.
I have looked over the laws referred to, and without giving an opinion upon them respectively, I can only observe, that in general, they merely vary the remedies on existing obligations, without adding to, or diminishing their original force: Which is the case of motions against Sheriffs and their securities and the representatives of both, and for Sheriffs against deputies arid theirs. Whbn the remedy was given by motion against the securities and their representatives, both were considered as bound by existing obligations; all those bonds being joint and several, unless made joint through mistake. But, suppose a surety, bound by a joint bond at the time that law passed, and after his death, which discharged him altogether, as the law was when he gave his bond, a motion is made against his executors for judgment under the new law; it would come to the present question, and would receive a like decision. The great case of docking estates tail, was partly mentioned by Mr. Randolph, and as I have often heard it complained of, it may deserve particular notice. That act did not take from any person, a right vested, either in possession, reversion or remainder, but unfettered them of limitations, which restrained their power of disposition of which they could not complain, since if they chose, that the land should go to the next heir in tail, they might still so dispose of it by deed or will. But, it disappointed the expectation of heirs, apparent: It would be strange indeed, if the Legislature was restrained from passing laws which might disappoint the hopes of men. But, what was the existing state of these expectations? In England, they might at any time be defeated by fine and recovery. Our Legislature in 1710, [Oct. 1705, c. 21, 3 Stat. Larg. 320,] prohibited that mode, and reserved to themselves the sole power of docking intails, which they exercised *by laws, passed in each particular case, till 1776, and then passed the general law, upon principles of public utility, preserving, as I said, all vested rights. Children of wealthy parents hope to succeed to a comfortable provision; but, shall that hope restrain the Legislature from passing laws, subjecting the whole property of the parent, if necessary, to the payment of his debts? The cases appear to me to assimilate. But, further to shew the intention of the Legislature to avoid the changing existing obligations, I would refer to the act passed in January, 1788, which I before mentioned, and was one of those in the counsel’s list: that act declared that the lands of the Sheriff, Coroner, or other public collector and their securities, may be taken on a fieri facias, on judgments to be obtained against them, with a proviso, that it should not extend ■to any securities who should have become *516 so before the passing- of that act, plainly-distinguishing between the principal, (as to whom the remedy was only varied) and the securities, whose obligation was not to be changed. From whence, I presume, that if the Legislature had intended the clause now under consideration should comprehend prior obligations, they would have observed the same distinction between the principal and securities, and there would have been no objection to the law. But, they have not made the distinction; and since the Court cannot make it, but the latter as well as the former must be involved in the same decision, we must decide it as a general question respecting all the obligors; although it is probable, that Elliott was the principal in this case, from his being first named, and having paid part of the money. And X am of opinion, that the law does not respect this bond at all, but the creditor is left to his former remedy against the appellant in equity, or against the surviving obligor, who, in the event of their paying, may resort to the appellant for reimbursement. Upon the whole, there is error in the judgment, which is to be reversed by the unanimous'opinion of the Court.